EDWARD LANGE, Appellant, *v.* CHARLES L. BENEDICT,
                    Respondent.

A judge of a superior court or court of general jurisdiction is not liable for
   a judicial act in a matter within his jurisdiction, although the act is in
   excess thereof.
In an action for false imprisonment the complaint alleged, in substance,
   that defendant wrongfully and willfully, without just cause, provocation
   or jurisdiction, falsely imprisoned and caused to be detained in prison
   the plaintiff, under the following circumstances: Defendant presided as
   judge at and held a United States Circuit Court, before which plaintiff
   was tried and convicted of a statutory offence, punishable by a fine or
   imprisonment; he was sentenced by defendant to pay a fine and also
   to be imprisoned. Plaintiff paid the amount of the fine to the clerk of
   the court, who paid the same into the United States treasury. A writ
   of *habeas corpus* was granted and returned into said court during the
   same term, and on such return, defendant holding the court and as judge
   thereof, vacated and set aside the sentence, and re-sentenced the plaintiff
   to imprisonment, and he was imprisoned accordingly. In proceedings
   afterwards had the United States Supreme Court adjudged and re-sen-
   tence to have been pronounced without authority, and discharged plain-
   tiff from imprisonment. It was not alleged that defendant was a party
   to such proceedings or was represented or heard therein. *Held,* that the
   complaint did not set forth a cause of action, and that a demurrer thereto
   was properly sustained; that defendant in imposing the second sentence
   acted judicially and was not liable, although such sentence was in excess
   of jurisdiction and void.
Also, *held,* that the general averment in the complaint that defendant
   "wrongfully and willfully, without   *   *   *   jurisdiction falsely
   imprisoned" the plaintiff, did not entitle plaintiff to judgment under the
   rule that the demurrer admits the allegations in the pleadings demurred
   to, as by the complaint it was based upon the special circumstances set
   forth, and was no broader or more effectual than those circumstances.

(Argued January 31, 1878; decided March 19, 1878.)

APPEAL from judgment of the General Term of the
Supreme Court in the first judicial department, in favor of
defendant, entered upon an order reversing an order
of Special Term which overruled a demurrer to the com-
plaint herein, and sustaining the demurrer. (Reported
below, 8 Hun, 362.)

This action was for false imprisonment. The allegations of the complaint are set forth sufficiently in the opinion.

*Wm. Henry Arnoux,* for appellant. When plaintiff was convicted he was not legally liable to the punishment imposed. (*Ex parte Lange*, 18 Wall., 165; *People* v. *Liscomb*, 60 N. Y., 570.) Plaintiff was not compelled to stand or fall by the record as made by defendant, so that no notice of what was done under it can be taken by the court having jurisdiction herein. (*Gahan* v. *Lafitte*, 3 Moore P. C. C., 282; *People* v. *Carter*, 29 Barb., 203.) Final judgment having been rendered in plaintiff's case, defendant had no power to open it to render a different judgment upon the same facts, and is liable for so doing. (1 Wait's Pr., 12; *People* v. *Liscomb*, 60 N. Y., 576; *Butler* v. *Van Wyck*, 1 Hill, 459; 1 Cooley's Blackstone, 70, note 5; Ram's Legal Judgment [Townshend's ed.], 424; *Ex parte Lange*, 18 Wal., 165; *U. S.* v. *Un. Pac. R. R. Co.*, 91 U. S. R., 91.) When the United States Supreme Court determined that the writ of *habeas corpus* should issue, it necessarily determined that plaintiff's imprisonment was illegal. (*People* v. *Liscomb*, 60 N. Y., 570.) Jurisdiction is the right to pronounce judgment acquired through due process of law. (10 Co., 73 *a;* 1 Bulstr., 211; Hale's Anal., § 11; Halifax Anal., b. 3, c. 8, num. 4; *U. S.* v. *Arredondo*, 6 Pet., 691, 709; 2 How. [U. S.], 319, 339; 3 Mctc., 460, 462; 1 Hurd on Freedom and Bondage, 22; Sprague's New Science of Law, 4; *In re Tirnan*, 5 B. & S., 645, 672; Du Ponceau on Jurisdiction, 21; *Lock* v. *Ashton*, 12 Q. B., 874; *Martin* v. *Marshall*, Hob., 63; *State* v. *Sauvinet*, 24 La. An., 119; 13 Am. R., 115; Austin on Jurisprudence, 793.) As to what is due process of law. (Thompson's Magna Charta, 52, 82, 83, 113, 127, 155, 423; 2 Coke's Inst., 50; *Murray's Lessee* v. *Hob. Land Co.*, 18 How. [U. S.], 276; *In re John and Cherry Sts.*, 19 Wend., 676; 1 Reeves' Hist. Eng. Law, 249; 2 Story Const., § 1789; *Green* v. *Briggs*, 1 Curtis C. C., 326; *Westervelt* v. *Gregg*, 12 N. Y , 209; *Taylor* v. *Por-*

*ter,* 4 Hill, 146 ; *Burch* v. *Newbury,* 10 N. Y., 397; *Embury* v. *Connor,* 3 N. Y., 517; *Wynhamer* v. *People,* 13 id., 416; *Met. Bd. of Health* v. *Heister,* 37 id., 682; *State* v. *Simons,* 2 Spear, 767; U. S. Const., art. 5; *Rowan* v. *State,* 30 Wis., 129–148; 1 Kent's Com. [11th ed.], 600; *Bk. of Columbia* v. *Okley,* 4 Wheat., 235; *Dart. Col.* v. *Woodward,* 4 id.; Scdg. Stat. & Con. Law, 537 ; Cooley's Const. Lim., 354, 397 ; *Mayo* v. *Wilson,* 1 N. H., 53; *McCready* v. *Sexton,* 29 Iowa, 356; 4 Am. R., 229.) The right of a court to pronounce judgment, by due process of law, demands three out of the five following requisites, viz., jurisdiction of the territory. (Story's Confl. Law, §§ 18, 20, 539; Rodenburg De Stat., chap. 3, § 1, p. 7; Clark's Tr. on Extradition, 96; Sedg. Stet. Law, 70; Voet De Stat., § 4, ch. 2, n. 7, p. 124; 1 Boullenois Prin. Gen., 6, p. 4; 1 Foullier, 92; Fit. prel., §§ 8, 112; *Blanchard* v. *Russell,* 13 Mass., 4 ; *Bk. of Augusta* v. *Earle,* 13 Peters, 519; Lawrence's Wheaton, 188 ; Story's Confl. Law, § 537 ; Huberus, tom. 2, lib. 5, tit. 1, de Foro Compet., § 38, p. 722; J. Voet ad. Pand., lib. 5, tit. 1, de Judiciis, 303; 1 Boullenois, obs. 25, pp. 601, 618, 619, 635; Henry Foreign Law, ch. 8, p. 54, ch. 9, p. 63; Erskine, Scot. Inst., b. 1, tit. 2, § 16–22; Dig., lib. 2, tit. 1, l. 20; *Yelverton* v. *Yelverton,* 1 Sw. & Tr., 586; *Warrender* v. *Warrender,* 9 Bligh, 144; *Litchfield* v. *Burwell,* 5 How. Pr., 341; *Ex parte Green* v. *Oneida Common Pleas,* 10 Wend., 592; *Fiske* v. *Anderson,* 12 Abb., 8; *Fenton* v. *Garlick,* 8 J. R., 150; *Andrews* v. *Heriot,* 4 Cow., 524; *Barnes* v. *Harris,* 4 N. Y., 377; Du Ponceau on Jurisdiction, 34.) Jurisdiction of the subject-matter. (*Burckle* v. *Eckhart,* 3 N. Y., 132, 137; *Coffin* v. *Tracy,* 3 Caines, 129; *Davis* v. *Packard,* 7 Peters, 276; *Dudley* v. *Mayhew,* 3 N. Y., 9; *McMahon* v. *Rauhr,* 47 id., 67; *People* v. *The Clerk, etc.,* 3 Abb., 309; 1 Kent's Com., 281; *Viburt* v. *Frost,* 3 Abb. Pr. R., 119; *Bingham* v. *Disbrow,* 37 Barb., 24; *The Mary,* 9 Cranch, 126; *Shriver's Lessee* v. *Lynn,* 2 How., 60.) Jurisdiction of the process. (Fitzh. Abr. Monstraus de Faits, pl. 182; Year Bk., 39

Hen., 6, p. 17, pl. 21; Broom's Const. Law, 165; *Martin* v. *Marshall*, Hob., 63; *Entich* v. *Carrington*, 2 Wils., 275; *Perkins* v. *Proctor*, 2 id., 382; *Mitchell* v. *Foster*, 12 A. & E., 472; *Grumon* v. *Raymond*, 1 Conn., 40; Comyn's Dig., tit. Imprisonment [H. 5, 7]; 2 Inst., 52, 186, 187; H. P. C., 94; *Greene* v. *Briggs*, 1 Curtis C. C. R., 311; *In re Tivnan*, 5 Best & Smith, 645; Klüber, § 66; Martens' Précis, § 101; Opinions Att'ys-Genl., vi. 485, vii. 6; *In re Kaine*, 14 How., 103; Clark's Treatise on Extradition, 91; *Lessees of Payne* v. *Moreland*, 15 Ohio, 444; *Borden* v. *State*, 11 Ark. [6 English], 519; *Lessee of Walden* v. *Craig's Heirs*, 14 Pet., 154; *Webster* v. *Reid*, 11 How., 450; *U. S.* v. *Thompson*, 2 Cr. C. C. R., 409; *Countess of Rutland's Case*, 6 Rep., 54 a.) Jurisdiction of the person. (1 Saund. by Wms., 87, 90, n. 1; 1 Cowp., 10; 3 T. R., 185; *Barnes* v. *Harris*, 4 N. Y., 377; *Harriott* v. *The New Jersey R. R. Co.*, 8 Abb., 284; *In the Matter of Ferguson*, 9 J. R., 289; *McMahon* v. *Mut. Benefit Life Ins. Co.*, 3 Bosw., 644; 8 Abb. Pr., 297; *Hunt* v. *Inhabitants of Hanover*, 8 Metc., 343; *Turner* v. *Roby*, 3 N. Y., 196; *King* v. *Pecham*, Caith., 406; *Rex* v. *Clegg*, 1 Str., 475; Hurd. Hab. Corp., 363; *Rex* v. *The Chancellor, etc.*, 1 Str., 557; *Bloom* v. *Burdick*, 1 Hill, 139; *Bustard* v. *Gates*, 4 Dana, 435; *The Mary*, 3 Con. [U. S.], 212; *Boswell's Lessee* v. *Otis*, 9 How. [U. S.], 350; *Borden* v. *Fitch*, 15 J. R., 142; *Hilburn* v. *Woodworth*, 5 id., 41; *Robertson* v. *Ex'rs. of Ward*, 8 id., 80; *Fenton* v. *Garlic*, id., 96; *Pawling* v. *Bird*, 13 id., 192; *Gwin* v. *McCarroll*, 1 S. & M., 368; *Steers* v. *Steers*, 3 Cushman, 513; *Edwards* v. *Toomer*, 14 S. & M., 75; *Smith* v. *State*, 13 id., 140; *Harris* v. *Haldeman*, 14 How., 336; 1 Smith's Lead. Cases, 834 [5th Am. ed.]; *Mills* v. *Duryee*, 2 Hare & Wal. [L. C.], 815; *In Matter Flatbush Ave.*, 1 Barb., 289; *Mason* v. *Killibrum*, 2 Yerg., 383; *Shafer* v. *Gates*, 2 B. Mon. R., 455; 1 Camp., 66; *Borden* v. *State*, 11 Ark., 520, 569; *Webster* v. *Reid*, 11 How. Pr. R., 437; *Harris* v. *Hardman*, 14 id., 334; *Shumway* v. *Stillman*, 6 Wend., 447; *Bigelow* v. *Stearns*, 19 J. R., 39; *Stanton* v. *Ellis*, 12 N. Y., 578;

*Mackey* v. *Gordon*, 34 N. J.; 291; *Farnham* v. *Hildreth*, 32 Barb., 277; *Cole* v. *Hudson*, 63 id., 234; *Donnolly* v. *Libby*, 31 N. Y. Sup. Ct. R., 279; *Bearmain* v. *Sir W. Scott*, 3 Camp., 590.) Jurisdiction of the trial. (Erskine's Speeches [Reeves & Turner's ed., 1870], 163; *Rowan* v. *State*, 30 Wis., 129 ; *Rex* v. *Bolton*, 12 B., 66 ; *U. S.* v. *Burr*, 2 Wh. Cr. Cas., 573; Broom's Const. Law, 165; *Cave v. Mountain*, 1 M. & G., 261; *Rex* v. *Moulton*, 1 Q. B., 667; *Painter* v. *Liverpool Gas Co.*, 3 A. & E., 453; *R.* v. *Totness*, 7 Q. B., 690 ; *R.* v. *Lightfoot*, 6 E. & B., 822; Archbold Cr. Pl., 108; Const. Mass., 1780, art. XII, 1 Hough., 624; Const. New Hamp., 1792, art. XV, 2 id., 9; *R.* v. *Layer*, 16 Howell St. Pr., 101; 2 Hale's Pleas of the Crown, 258, 317; *Case of Stephen Le Ferrour*, 2 Hale, 317; *R.* v. *Picton*, 30 Howell St. Tr., 895; 2 Inst., 178, 179; Keilw. 70; Rast Ent., 385 ; Hawk., b. 2, c. 30, § 16; 4 Bla. Com., 327; *R.* v. *Juliana Quick*, 3 Howell St. p. 360; *R.* v. *Weston*, 2 How. St. Tr., 914; *May* v. *R. R.*, 3 Wis., 219; *Shaver* v. *Starrett*, 4 Ohio [N. S.], 494; *Norval* v. *Rice*, 2 Wis., 22; *Vaugh* v. *Scade*, 30 Miss., 600; *Isom* v. *R. R.*, 36 id., 300; *People* v. *Lane*, 6 Abb. [N. S.], 105; 3 Blacks., 379; 1 Reeve's His. Eng. Law, 87; *Cruger* v. *R. R.*, 12 N. Y., 190, 193; *Wynehaimer* v. *People*, 13 id., 378, 427; *People* v. *Carroll*, 3 Park, c. 22; Const. Deb., 1846, 540; *People* v. *Cancemi*, 7 Abb. P. R., 271, 301; Blackstone, vol. 1, 133, vol. 4, p. 189; Kilyngs R., 59; 1 Woodeson's Lectures, 346; 3 Inst., 30; *R.* v. *St. Michael*, 2 W. Bl. 718; *R.* v. *Mellor*, 5 Cox C. C., 454; *Shepherd* v. *The People*, 25 N. Y., 406, 418; *State* v. *Martin*, 30 Wis., 216; 11 Am., 567; *Ex parte Lange*, 18 Wall., 163; *Rex.* v. *Ellis*, 5 B. & C., 395; *The King* v. *Bourne*, 7 A. & E., 58; *The Queen* v. *Silversides*, 3 Q. B., 406; *King* v. *The Queen*, 7 id., 795; *Holt* v. *Regina*, 2 D. & L., 774; 9 Jur., 538; *Holland* v. *Queen*, 2 Jebb. & S., 357.) The question of jurisdiction may be inquired into as a matter of a fact in all subsequent actions wherein any judgment in a foreign tribunal is brought in question. This

principle of law applies to an action growing out of any matter in a Federal court, whether pleaded as the foundation of the action or as matter of defence. (Const. U. S., art. IV, sec. 1; *Mills* v. *Duryea*, 7 Cranch, 484; Story on Const., §§ 183, 1313; *Webster* v. *Reid*, 11 How., 437; *Harris* v. *Hardeman*, 14 id., 334; *Christmas* v. *Russell*, 5 Wall., 290; *Elliott* v *Pearsall*, 1 Pet., 328, 345; *U. S.* v. *Arredonds*, 2 id., 279; *Voorhees* v. *Bk. of U. S.*, 10 id., 475; *Wilcox* v. *Jackson*, 13 id., 511; *Shriver* v. *Lynn*, 2 How., 60; *Hickey* v. *Stewart*, 3 id., 762; *Williams* v. *Berry*, 8 id., 540; 14 id., 334; *Thompson* v. *Whitman*, 11 Am. R., 435, note; Sprague's New Science of Law, 24; Lord Moncreff, Address Social Science Ass'n, 1874; *Starbuck* v. *Murray*, 5 Wend., 156; *Marx* v. *Fore*, 11 Am. R., 434; *Noyes* v. *Butler*, 6 Barb., 613; *Kerr* v. *Kerr*, 41 N. Y., 275; *Kinnier* v. *Kinnier*, 45 id., 541; *Burckle* v. *Eckhart*, 3 id., 137; *Peacock* v. *Bell*, 1 Saund., 74; 1 Wm's notes to Saunders, 96, note 2; *Bissell* v. *Briggs*, 9 Mass., 462; *Hall* v. *Williams*, 6 Pick., 222; *Woodward* v. *Freewere*, 6 id., 354; *Moore* v. *Houston*, 3 S. & R., 189; *Harrington* v. *People*, 6 Barb., 607; *Sears* v. *Terry*, 26 Conn., 273; *Denning* v. *Corvin*, 11 Wend., 648; *People* v. *Cassels*, 5 Hill, 164; *R.* v. *Bolton*, 1 Q. B., 66; *R.* v. *Badger*, 6 E. & B., 13; *R.* v. *Wood*, 5 id., 49; *R.* v. *Justices of Totness*, 2 L. M. & P., 230; *R.* v. *St. Olave's Board*, 8 E. & B., 529; *In re Smith*, 3 H. & N., 227; *R.* v. *Nunnely*, E. B. & E., 852; *R.* v. *Cudland*, 7 E. & B., 352; *R.* v. *Backhouse*, 30 L. J. Mc., 118; *R.* v. *St. James's, Westminster*, 2 A. & E., 241; *R.* v. *Inhabitants of Marlow*, 2 East, 244; *R.* v. *Justices of Yorkshire*, 5 T. R., 629; *R.* v. *Justices of Cheshire*, 1 P. & D., 93; *R.* v. *Sheffield, etc.*, *R. R.*, 11 A. & E., 194; *The Whitbury, etc., Union Case,* 4 E. & B., 314; *In re Penny*, 7 id., 660; *Mortimer* v. *S. Wales R. R.*, E. & E., 375; *In re Hopkins*, E. B. & E., 100; *R.* v. *Recorder of Cambridge*, 8 E. & B., 637; *R.* v. *Cheltenham Com'rs*, 1 Q. B., 467; *In re Baker*, 2 H. & N., 219; *People* v. *McLeod*, 3 Hill, 665; *People* v. *Clark*, 7 N. Y., 390; *Ohio L. and T. Co.* v. *De Bolt*, 16 How., 428;

*Bucknow* v. *Finley*, 2 Pet., 590; *Bank of Augusta* v. *Earle*, 13 id., 520; *Martin* v. *Hunter*, 1 Wheat., 334.)

When the judgment of a court of limited jurisdiction becomes a subject of legal investigation, the jurisdiction of the court or judge pronouncing such judgment must affirmatively appear upon the record to sustain its validity, otherwise such judgment is void. (*Jones* v. *Reed*, 1 Johns. Cas., 20; *Wells* v. *Newkirk*, id., 228; *Powers* v. *People*, 4 J. R., 292; *Bloom* v. *Burdick*, 1 Hill, 130; *Adkins* v. *Brewer*, 3 Cow., 206; *Turner* v. *Roby*, 3 N. Y., 193.)

The Circuit Court of the United States being a court of limited jurisdiction in respect to all criminal trials there was no presumption of law that defendant acted within his authority, and upon its being questioned he was bound to show affirmatively his jurisdiction to protect him as a judge. (*Dicas* v. *Brougham*, 6 Car. & P., 249 ; *Christie* v. *Unwin*, 11 A. & E., 373; *Houlden* v. *Smith*, 14 Q. B., 841; *Carratt* v. *Morley*, 1 id., 18; *Watson* v. *Bodell*, 14 M. & W., 57; *Calder* v. *Halket*, 3 Moore P. C. C., 76, 77; *Denning* v. *Corwin*, 11 Wend., 648; *Sharp* v. *Speir*, 4 Hill, 76; *Striker* v. *Kelly*, 7 Hill, 9; *Staples* v. *Fairchild*, 3 N. Y., 41; *Hallet* v. *Righters*, 13 How. Pr., 43; *Townley* v. *McDonald*, 32 Barb., 604; *Hills* v. *Mitson*, 8 Ex., 750; *Service* v. *Heermance*, 1 J. R., 91; *Roosevelt* v. *Kellogg*, 20 id., 208; *Stevens* v. *Ely*, 6 Hill, 607; *Sackett* v. *Andross*, 5 id., 327; *Maples* v. *Burnside*, 1 Den., 332; *Varnum* v. *Wheeler*, id., 331; *Coates* v. *Simmons*, 4 Barb., 403; *Morse* v. *Presby*, 5 Foster, 299; *McCormick* v. *Pickering*, 4 N. Y., 276; 1 Smith's Leading Cases [ed. 1873], 1116; *Jackson* v. *Estey*, 7 Wend., 148; *The Matter of Mt. Morris Square*, 2 Hill, 14; *Williamson* v. *Berry*, 8 How., 495; *Williamson* v. *Ball*, id., 566; *In the Matter of Flatbush Ave.*, 1 Barb., 289; *Forest* v. *The Commonwealth*, 9 Casey, 338, 344; *Owen* v. *Jordan*, 27 Ala., 663; *Foster* v. *Glazener*, id., 391; *Eastman* v. *Jones*, 2 Ga., 493; *Colton* v. *Washington Ins. Co.*, 35 N. H., 162; *Anderson* v. *Comrs. of Hamilton*, 12 Ohio [N. S.], 636; *Doolittle* v. *Chicago R. R. Co.*, 14 Ill., 381; *People* v. *Williamson*,

13 id., 660; *Peak* v. *City of Boston*, 8 Pick., 218; *Cooper* v. *Sunderland*, 3 Clark, 114; *Gray* v. *Rescille*, 4 Wis., 59; *Muskett* v. *Drummond*, 10 B. & C., 153; *Brancker* v. *Molyneux*, 4 M. & G., 226; *Boswell's Lessees* v. *Otis*, 9 How., 336; *Thatcher* v. *Powell*, 6 Wheat., 119; *Mahew* v. *Davis*, 4 McLean, 213; *Embury* v. *Conner*, 3 Comst., 511; *Eaton* v. *Badger*, 33 N. H., 228, 237; *Fiske* v. *Anderson*, 33 Barb., 71; *Commonwealth* v. *Blood*, 97 Mass., 348; 2 Am. L. Cases, 603, 633; *Thomas* v. *Robinson*, 3 Wend., 267; *Commonwealth* v. *Gould*, 97 Mass., 538; *Calvin* v. *Reed*, 5 P. F. Smith, 375; *Elder* v. *Reed*, 12 id., 308; *Borden* v. *Fitch*, 15 J. R., 151; *Folger* v. *Columbian Ins. Co.*, 99 Mass., 267; *Suydam* v. *Key*, 15 J. R., 446; *City of Chicago* v. *Rock Island R. R. Co.*, 20 Ill., 286; *Voorhees* v. *Bank of U. S.*, 10 Pet., 449; *Florentine* v. *Barton*, 2 Wall., 210; *Dyckman* v. *The Mayor*, 1 Seld., 434; *Delaney* v. *Gault*, 6 Casey, 63, 67; *Ransom* v. *Williams*, 2 Wall., 313; *Ex parte Yerger*, 8 id., 85; *U. S.* v. *Hudson*, 7 Cr., 32; *U. S.* v. *Coolidge*, Wheat., 416; Wheat. Cr. L., 76; Wheat. St. Tr., 87; *Bingham* v. *Cabot*, 3 Dallas, 383; *Wood* v. *Wagnon*, 2 Cranch, 9; *Brown* v. *Keene*, 8 Pet., 112; *Jackson* v. *Ashton*, 8 id., 147; *McCormick* v. *Sullivan*, 10 Wheat., 192; *Bk. U. S.* v. *Moss*, 6 How. [U. S.], 40; *Harrison* v. *Hadley*, 2 Dill., 229, citing 4 Dall., 8; 7 Cranch, 32, 306; 3 Blatch., 84; 1 Wash., 232; 8 How. [U. S.], 541; 1 Dill., 344, 348; Sergeant's Const. Law; *Turner* v. *Bk. of N. A.*, 4 Dale, 11; *Mayfield's Lessee* v. *Levy*, 4 id., 330; *U. S.* v. *Bird*, 1 Spr. Dec., 299; *U. S.* v. *Worrall*, 2 D., 393; Whart. St. Tr., 189; *U. S.* v. *Hare*, 2 Wh. C. Cas., 300; *U. S.* v. *Hudson*, 7 Cr., 32; *U. S.* v. *Coolidge*, 1 Wh., 415; 1 Gall., 488; *Penn.* v. *Wheeling*, etc., 13 H., 519; *U. S.* v. *Clark*, 1 Gall., 497; *U. S.* v. *MacKenzie*, 1 N. Y. Leg. Obs., 374; *U. S.* v. *Wilson*, 3 Bl. C. C., 435; *U. S.* v. *Ramsey*, Hemp., 481; *U. S.* v. *Barney*, 3 Int. R. Rec., 46; *U. S.* v. *Barney*, 5 Bl. C. C., 294; *Ex parte Bergen*, 4 Am. L. T., 39; *Ex parte Bollman*, 4 Cr., 75; *U. S.* v. *Beavans*, 3 Wh., 336; *U. S.* v. *Libby*, 1 Woodb. & M., 221; *U. S.* v. *New Bedford Bridge,*

1 W. &. M., 401; *U. S.* v. *Lancaster*, 2 McLean, 431; *U. S.* v. *Irwin*, 5 id., 178.) Every judge who acts without or beyond his jurisdiction is liable as a trespasser to the party injured. (*Shriver's Lessee* v. *Lynn*, 2 How. [U. S.], 43; *Lessees of Heckey* v. *Stewart*, 3 id., 750; *Striker* v. *Kelly*, 7 Hill, 9; *People* v. *Cassels*, 5 id., 164; *Harrington* v. *People*, 6 Barb., 607; 1 Smith's Lead. Cas. [5th Am. ed.], 821; *Rathbone* v. *Terry*, 1 R. I., 73; *Starbuck* v. *Murray*, 5 Wend., 148; *Mills* v. *Duryee*, 2 Am. L. C. [H. & W.], 778; *Cable* v. *Cooper*, 15 J. R., 155; 2 Inst., 54, 55, 427; *Hilarie Warren's Case*, 11 H., 7; Hale's Analysis Civil Law, § XLIV; Hawkins' Pleas of the Crown, b. 1, c. 28, §§ 4, 5, 6; *Case of the Marshalsea*, 10 Coke R., 76; *Smith* v. *Dr. Boucher*, Camp., 214; *Perkins* v. *Proctor*, 2 Wils., 382; *Dicas* v. *Brougham*, 6 C. & P., 249; *Parsons* v. *Loyd*, 3 Wils., 341; *Fort* v. *Stevens*, 17 Wend., 483–487; *Case of J. V. N. Yates*, 4 J. R., 318; *Yates* v. *People*, 6 id., 337; *Yates* v. *Lansing*, 5 id., 286; *Barnes* v. *Harris*, 4 N. Y., 379; *Farnham* v. *Hildreth*, 32 Barb., 277; *Townley* v. *McDonald*, id., 604; 1 Hilliard on Torts [4th ed.], 215; *Comfort* v. *Fulton*, 13 Abb., 276; *Lancaster* v. *Greaves*, 9 B. & C., 628; *Morgan* v. *Brown*, 4 A. & E., 515; *Mygatt* v. *Washburn*, 15 N. Y., 316, 321; *Van Alstyne* v. *Erwine*, 11 id., 341; *Ex parte Haynes*, 18 Wend., 611; *Cadwell* v. *Colgate*, 7 Barb., 253; *Miller* v. *Adams*, 52 N. Y., 409; *People* v. *Liscomb*, unreported; *Flanagan* v. *People*, 52 N. Y., 471; *Clark* v. *Holdridge*, 58 Barb., 61; *Randall* v. *Brigham*, 7 Wall., 523; *Bradley* v. *Fisher*, 13 id., 335, 351; *McGregor* v. *Thwaites*, 3 Best & Smith, 24; Addison, Law of Torts, 265; *Loan Assn.* v. *Topeka*, 20 Wall., 655.) The fact that defendant acted in good faith does not relieve him from liability. (*Snyder* v. *Plass*, 28 N. Y., 476; *Hamilton* v. *Third Avenue Railroad Company*, 53 id., 25; *Parsons* v. *Harper*, 16 Gratton R., 64; *Barker* v. *Braham*, 3 Wils., 368; *Blythe* v. *Tompkins*, 2 Abb. Pr. R., 468.) Defendant was liable for all expenses incurred by plaintiff. (*Parsons* v. *Harper*, 16 Grat., 73; *Sandback* v. *Thomas*, 1

Stark., 306; *Foxhall* v. *Barnett,* 22 Law J. R. [N. S.], Q. B., 7; 18 Jur., 1, 41; 22 E. L. & E., 179; *Linsley* v. *Bushnell,* 15 Conn., 225–235; *Whipple* v. *Fuller,* 11 Conn. Rep., 582; *Gould* v. *Barratt,* 2 M. & Rob., 171; *Nowell* v. *Roake,* 7 B. & C., 404.) Plaintiff can recover the value of his lost time measured by the nature, extent and profitableness of his business. (*Williams* v. *Vanderbilt,* 28 N. Y. 217; *Lincoln* v. *Saratoga R. R.,* 23 Wend., 425; *Peoria Bridge Ass'n* v. *Loomis,* 20 Ill., 235–252.) Plaintiff could recover for the injuries he sustained, including bodily pain, mental suffering and the indignity of a false imprisonment. (*Hamilton* v. *Third Ave. R. R.,* 53 N. Y., 25; *Leger* v. *Town of Barkhampstead,* 22 Conn., 290; *Beardsley* v. *Swann,* 4 McLean, 333; *Morse* v. *A. and S. R. R. Co.,* 10 Barb., 621; Shearman & Redfield on Negligence [3d ed.], §§ 606, 606 *a; Blake* v. *Midland Railway Co.,* 18 Q. B., 93; 10 E. L. & Eq. R., 437; *Ransom* v. *N. Y. and E. R. R.,* 15 N. Y., 415; *Canning* v. *Inhabitants of Williamstown,* 1 Cush., 451; *Thompson* v. *Mussey,* 3 Greenl., 305.) The first sentence of plaintiff was void. (1 Chitty Cr. Law, 251–252, 638; 2 East Pleas of the Crown, 737, 776; *Westben's Case,* 1 Leach, 14; 2 Strange, 1133; *Commonwealth* v. ————, 7 Mass., 245–249; *Commonwealth* v. *Roby,* 12 Pick., 496; *U. S.* v. *Reid,* 12 How. [U. S.], 361; Anon., Pet. C. C., 1.)

*B. F. Tracy,* for respondent. There was no false imprisonment, as plaintiff, upon conviction, became liable to the punishment imposed by either or both the sentences set forth in the complaint. (U. S. R. S., § 1024; *People* v. *Davis,* 56 N. Y., 100; *Comm.* v. *Birdsall,* 69 Penn., 482; *Carlton* v. *Comm.,* 46 Mass., 532; *Booth* v. *Comm.,* id., 533; *O'Connell's Case,* 11 Cl. & F., 307; *Latham* v. *Queen,* 5 B. & L., 641.) The first sentence having been expunged from the record, the second sentence when pronounced was the only sentence and the imprisonment complained of was lawful. (*King* v. *Price,* 6 East, 327; *N. P. Co.* v. *Rock. R. R. Co.,* 7 Chi. Legal News, 33; *Sheppard* v. *Wilson,* 6 How., 273; *Doss* v. *Tyack,*

14 id., 312; *U. S.* v. *Bassett*, 9 Wall., 38; *Kain* v. *People*, 8 Wend., 215; *Ex parte Watkins*, 7 Pet., 567.)   The exercise of the power to vacate a sentence, in cases where the sentence is in part executed, does not violate the constitutional provision which forbids that one shall be twice punished for the same offense.   (18 Wall., 170; *Ratzky* v. *People*, 29 N. Y., 124, 135; *Foote* v. *People*, 56 id., 323; *Harris* v. *People*, 59 id., 599.)   The legality of the defendant's acts must be determined by the law as it then stood. (*Bassett* v. *U. S.*, 9 Wall., 38.)   Defendant's act in pronouncing the judgment was a judicial act, and affords no right of action against him. (*Bushnell's Case*, 1 Mod., 118; 2 Hawkins, chap. 72, § 6; *Floyd* v. *Baker*, 12 Coke X., 23; *Aire* v. *Sedgwick*, 2 Roll., 199; *Hammond* v. *Howell*, 1 Mod., 184; 2 id., 218: *Taffe* v. *Downes*, 3 Moore's P. C. C., 41, note; *Sutton* v. *Johnstone*, 1 T. R.; *Yates* v. *Lansing*, 5 J. R., 282; *Bradley* v. *Fisher*, 13 Wall., 336, 350, 351; *Barhyte* v. *Shepherd*, 35 N. Y., 251; Viner's Abr., tit. Judges; *Floyd* v. *Baker*, 12 Coke.)

FOLGER, J.   The plaintiff has brought an action against the defendant for false imprisonment, and detention in prison. He alleges that it was wrongful and willful, without just cause or provocation.   He does not allege that it was malicious or corrupt.   The complaint in the action sets out the facts *in extenso* upon which the plaintiff relies.   To this the defendant has demurred, stating three causes of demurrer; but the one cause relied upon, is that the complaint does not state facts sufficient to constitute a cause of action.

It is well, therefore, to state with some particularity the facts which are alleged, or are conceded.   In October, 1873, the defendant was judge of the District Court for the United States, of the eastern district of New York.   As such, by virtue of an act of Congress, he presided at and held the Circuit Court of the United States for the southern district of New York, for the October term of that year.   The plaintiff was at that term arraigned upon an indictment of twelve

counts, the general purport of which was that he had stolen, embezzled or appropriated to his own use, certain mail-bags, the property of the United States, of the value of twenty-five dollars; he was tried upon the indictment; the verdict of the jury was, generally, that the plaintiff was guilty, and that the value of the mail-bags was less than twenty-five dollars. He was indicted under an act of Congress, which declared the offense and affixed the punishment. By that act, if the value of the mail-bags taken was found to be less than twenty-five dollars, the punishment for the offense was a fine of $200 *or* imprisonment for one year. The defendant sitting as such judge, and holding that court at that term, passed judgment upon the plaintiff, and sentenced him to pay a fine of $200, *and* to be imprisoned for one year. It is manifest that the punishment thus imposed was more than that affixed to the offense by the act of Congress. The plaintiff paid to the clerk of the United States Circuit Court, intending it in full payment of the fine so imposed, the sum of $200. This was done on the 4th day of November, 1873, and during the same term of the court; and the clerk made certificate that that sum was then on deposit in the registry of that court. The clerk paid the money into the office of the assistant treasurer of the United States, in New York city, in that circuit, to the credit of the treasurer of the United States, as the fine thus imposed. There is no direct allegation in the complaint that the plaintiff was imprisoned under that sentence. There is an allegation, that during the same term of that court, a writ of *habeas corpus* was granted and returned into that court, in which the imprisonment of the plaintiff was made to appear. It may be taken as conceded, however, that the plaintiff was actually in prison for the space of five days after the pronouncing of that sentence, and before further proceedings were had. At the same term of that court, the defendant sitting and holding that court, and as the judge thereof, on the return of that writ vacated and set aside the sentence above set forth, and at the same time, and as a part of the same judicial act and order, passed

judgment anew upon the plaintiff, and resentenced him to be imprisoned for the term of one year. Under this action of the defendant the plaintiff was imprisoned ; which is the alleged wrongful imprisonment and detention of him by the defendant.

Judicial proceedings were afterwards had in behalf of the plaintiff, the end of which was that the Supreme Court of the United States adjudged the resentence, above stated to have been pronounced, without authority, and discharged the plaintiff from his imprisonment. It does not appear that the defendant was a party to the proceedings in the Supreme Court, or was heard or represented there.

On this state of facts the plaintiff insists that the defendant is liable to him in damages. The defendant claims that the facts show that all which he did, he did as a United States judge, and that the judicial character in which he acted protects him from personal responsibility.

In our judgment, the question between the parties is brought to what, in words at least, is a very narrow issue : Did the defendant impose the second sentence *as a judge ;* or, although he was at the moment of right upon the bench, and authorized and empowered to exercise the functions of a judge, was the act of resentencing the plaintiff so entirely without jurisdiction, or so beyond or in excess of the jurisdiction which he then had as a judge, as that it was an arbitrary and unlawful act of a private person? A narrow issue, but not to be easily determined to the satisfaction of a cautious inquirer.

The plaintiff makes a preliminary point, that inasmuch as the complaint avers that the defendant wrongfully and willfully, and without jurisdiction, falsely imprisoned the plaintiff, that, therefore, as a technical rule of pleading, the demurrer having admitted the allegations of the complaint, there must be judgment for the plaintiff. But the complaint does not rest satisfied with that general allegation. It rests the general allegation upon the special circumstances afterward set forth in it, and which are made up of all or nearly

all the facts which we have above recited. So we have to consider them as well as the general allegation, and to treat the general allegation as no broader or more effectual than the special circumstances upon which the complaint rests it.

There are not many topics in the law which have received more discussion and consideration than that of the liability of a person holding a judicial, or *quasi* judicial office, to an action at law, for an act done by him while, at the same time, exercising his office. The principles which should govern such action are, therefore, well-settled. The difficulty in satisfactorily disposing of a particular case is, not in finding the rule of law upon which it is to be decided, but in determining on which side of that rule the facts of the case do lie.

The general rule, which applies to all such cases, and which is to be observed in this, has been in olden times stated thus : Such as are by law, made judges of another, shall not be criminally accused, or made liable to an action for what they do as judges ; to which the Year Books (43 Edw., 3, 9 ; 9 id., 4, 3) are cited in *Floyd* v. *Baker* (12 Coke, 26). The converse statement of it is also ancient ; where there is no jurisdiction at all, there is no judge ; the proceeding is as nothing (*Perkin* v. *Proctor* 2 Wilson, 382–384) citing the *Marshalsea Case* (10 Coke, 65–76), which says : " Where he has no jurisdiction, *non est judex.*" It has been stated thus, also : No action will lie against a judge, acting in a judicial capacity, for any errors which he may commit, in a matter within his jurisdiction. (*Gwynne* v. *Pool*, Lutw., 290.) It has been, in modern days, carried somewhat further, in the terms of the statement : Judges of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously and corruptly. (*Bradley* v. *Fisher*, 13 Wall., 351.)

It is to be seen that in these different modes of stating the principle, there abides a qualification. To be free from liability for the act, it must have been done as judge, in his

judicial capacity; it must have been a judicial act. So it always remains to be determined, when is an act done as judge, in a judicial capacity? And this is the difficulty which has most often been found in the use of this rule, and which is present here; to determine when the facts exist which call into play that qualification. .

For it is plain that the fact that a man sits in the seat of justice, though having a clear right to sit there, will not protect him in every act which he may choose or chance to do there. Should such an one, rightfully holding a court for the trial of civil actions, order the head of a bystander to be stricken off, and be obeyed, he would be liable. Thus, a person in the office of judge of the ecclesiastical court in England, excommunicated one for refusing to obey an order made by him, that he become guardian *ad litem* for an infant son, and though the order was made in a matter then lawfully before the court for adjudication, and of which he as judge had jurisdiction, he was held liable to an action. (*Beaurain* v. *Sir Wm. Scott*, 3 Campb., 388.) He had not, as judge, jurisdiction of the person to whom he addressed the order. On the other hand, one rightfully holding a court for the trial of a criminal action fined and imprisoned a juror, for that he did not bring in a verdict of guilty against one on trial for an offense, after the court had directed the jury that such a verdict was according to the law and facts. The juror was discharged from imprisonment on *habeas corpus* brought in his behalf, and it was held that the act of fining and imprisoning him was unlawful, inasmuch as there was no allegation of corruption or like bad conduct against the juror. The juror then brought action against him who sat as judge and made the order for the fine and imprisonment, but took nothing thereby, for it was held that the judge acted judicially, as judge, as he had jurisdiction of the person of the juror, and jurisdiction of the subject-matter, to wit: The matter of punishing jurors for misbehavior as such, and that his judgment that the facts of that case warranted him in inflicting punishment was a judicial error to be avoided and

set aside in due course of legal proceedings, for which how-ever he was not personally liable. (*Hammond* v. *Howell, Recorder of London*, 2 Mod., 218; *Bushell's Case*, Vaughan Reps., 135.) So a judge of Oyer and Terminer was protected from indictment when he had made entry of record that some were indicted for felony before him; whereas, in fact, they were indicted for trespass only. (12 Coke, 25.)

Thus it appears that the test is not alone that the act is done while having on the judicial character and capacity, nor yet is it alone that the act is not lawful.

We have seen, too, that the test is not that the act was in excess of jurisdiction, or alleged to have been done with malice and corruptly; for even if it is such an act, it does not render liable the doer of the act, if he be a judge of a court of general or superior authority. (*Bradley* v. *Fisher, supra.*)

We think it clear that there is no liability to civil action, if the act was done "in a matter within his jurisdiction," to use the words of *Gwynne* v. *Pool* (*supra*). Those words mean, that when the person assumed to do the act as judge, he had judicial jurisdiction of the person acted upon, and of the subject-matter as to which it was done. Jurisdiction of the person is when the citizen acted upon is before the judge, either constructively or in fact, by reason of the service upon him of some process known to the law, and which has been duly issued and executed. What is meant by jurisdiction of the subject-matter we have had occasion to consider lately in *Hunt* v. *Hunt* (72 N. Y., 217). It is not confined within the particular facts, which must be shown before a court or a judge, to make out a specific and immediate cause of action; it is as extensive as the general or abstract question, which falls within the power of the tribunal or officer to act concerning. Our idea will be illustrated by a reference to *Groenvelt* v. *Burwell* (1 Ld. Raym., 454). There the defendants, as censors of a college of physicians, had imposed punishment on the plaintiff for what they adjudged was malpractice by him. He brought his action. They pleaded the charter of the college, giving them power to make by-laws for the government of all prac-

titioners in medicine in London, and to overlook them and to examine their medicines and prescriptions, and to punish malpractice by fine and imprisonment ; that they had, in the exercise of that power, adjudged the plaintiff guilty of *mala praxis*, and fined him twenty pounds, and ordered him imprisoned twelve months, *nisi*, etc. It was held that the defendants had " jurisdiction over the person of the plaintiff, inasmuch as he practiced medicine in London ; and over the subject-matter, to wit, *the unskillful administration of physic.*" That is the language of HOLT, C. J., in that case. And because the defendants had power to hear and punish, and to fine and imprison, it was held that they were judges of record, and because judges not liable for the act of fining and imprisoning. (See, also, *Ackerley* v. *Parkinson*, 3 Maul. & Selw., 411.) It is the general abstract thing which is the subject-matter. The power to inquire and adjudge whether the facts of each particular case make that case a part or an instance of that general thing — that power is jurisdiction of the subject-matter. Thus in *Hammond* v. *Howell* (*supra*), the defendant was saved from liability to civil action, inasmuch as he had as judge jurisdiction of the subject-matter of punishing jurors for a misdemeanor upon the panel. He made an error in deciding that the facts of that case made an instance of that subject-matter. But the jurors were within his jurisdiction of their persons, and he had jurisdiction of the subject-matter, and his error was a judicial error; an act done *quatenus* judge ; not an act as Howell, the private person, though it was an act contrary to law, grievous and oppressive upon the citizen.

The inquiry then, at this stage of our consideration of the case is this : Whether the defendant, sitting upon the bench of the Circuit Court, and being on that occasion *de jure et de facto* the Circuit Court, and having as such jurisdiction of all persons by law within the power of that court, and jurisdiction of all subject-matters within its cognizance ; whether he had jurisdiction of the person of the plaintiff, and of any subject-matter wherefrom he had authority to hear and

adjudge whether the facts in the case of the plaintiff, as then presented to him, fell within any of those subject-matters. It is not the inquiry whether the act then done as the act of the court was erroneous and illegal; that is but another form of saying whether it could or could not be lawfully done as a court by the person then sitting as the judge thereof. It is whether that court then had the judicial power to consider and pass upon the facts presented, and to determine and adjudge that such an act based upon them would be lawful or unlawful.

That the defendant, as that court, had jurisdiction of the person of the plaintiff is manifest. He was before it on a return to a writ of *habeas corpus,* sued out by him, and was produced in court by the marshal to whom the writ was sent. He was in the custody of law upon a judgment and sentence of that court, the validity of which he was questioning, and seeking from that court a vacating and annulling thereof. At least until the order for vacating it was made the plaintiff was lawfully within the power of the court.

That court also had jurisdiction of the subject-matter. It might by law indict and try persons charged with stealing and appropriating mail-bags ; it might pass sentence upon them, when duly convicted, of fine or imprisonment ; during the same term of the court at which one sentence had been imposed, it might vacate it or modify it as law and justice would require. (*Ex parte Lange,* 18 Wall., 163.) If it had imposed a sentence greater than that prescribed by law, it could vacate it and inflict one in accord with the law. If no part of the invalid sentence imposed had been executed, it could vacate it and inflict one different in kind or degree. (*Ex parte Lange,* 18 Wall., 163; *Miller* v. *Finkle,* 1 Park. Cr. R., 374, and cases cited there.) In England it has been held that at the same term the judgment might be altered, and by reason of subsequent conduct of the convicted person the punishment be increased. (*Reg.* v. *Fitzgerald,* 1 Salk., 401.) And another sentence has been given after a portion

of the former one had been suffered. (*Rex* v. *Price*, 6 East, 323.) The judgment, as expressed in the prevailing pinion in *Ex parte Lange* (*supra*), is not in accord with those two cases, and we cite them without expression of approval or otherwise.

This was the subject-matter — the general matter then before the court. The particular matter or question presented was the sentence of fine and imprisonment passed upon the plaintiff; was it erroneous and unlawful in that it went beyond the limit of the law, he having been some days in imprisonment under it, and having paid a sum of money equal in amount to the fine, to the clerk of the court, who in turn had paid it to an officer of the United States government; was it lawful to vacate the sentence if in excess of the law; if that sentence should be vacated, was it lawful, under the facts of the case, to impose another sentence which should be in accord with the statute — did all these things present a case for the exercise of power, by virtue of the jurisdiction over the subject-matter? The court, we have seen, had the jurisdiction last named; did it not also have jurisdiction to adjudicate upon that state of facts? If it did have it, and did adjudicate erroneously, was it not a judicial error to be relieved from, by such writ as would bring it up for review, rather than a wrong done personally to be answered for in a civil action? Is not the person who filled the office of judge and by his presence on the bench made that court, free from liability for that adjudication, though the act done by him was erroneous and unauthorized by law?

It was held by this court, in *Roderigas* v. *East River Savings Bank* (63 N. Y., 460), that where general jurisdiction is given to a court of any subject, and that jurisdiction, in any particular case, depends upon facts which must be brought before that court for its determination upon the evidence, and where it is required to act upon such evidence, its decision upon this question of jurisdiction is conclusive until reversed, so far as to protect its officers, and all other innocent persons, who act upon it. How does it differ

when general jurisdiction is thus given, and depends upon the legal conclusion from a conceded state of facts, and when the court is required to act thereon, and draw a conclusion therefrom? Is not the adjudication of that court conclusive until reversed, so as to protect? Is not the act of adjudication, and the judgment given thereon, an act done with jurisdiction; hence a judicial act, an act done as a judge, or as a court? In *Howell's Case* (*supra*) there was no disputed question of fact. It was upon a conceded state of facts that he acted. He erred in his judgment of the effect in law of those facts; yet it was deemed a judicial error.

It is true that the United States Supreme Court upon a certain state of facts before it, and in a proceeding by *certiorari* to which this defendant was not a party, and in which he was not heard by that court, reached the conclusion that the second sentence of the Circuit Court was pronounced without authority, and discharged the plaintiff from his imprisonment thereunder. (*Ex parte Lange, supra.*) In the prevailing opinion given in the case are repeated expressions to the effect that the power of the Circuit Court to punish, further than the first sentence, was gone; that its power to punish for that offense was at an end when the first sentence was inflicted, and the plaintiff had paid the $200 and laid in prison five days; that its power was exhausted; that its further exercise was prohibited; that the power to render any further judgment did not exist; that its authority was ended.

It is claimed from these expressions that the force of the decision in that case, is that the defendant in pronouncing the second sentence upon the plaintiff did not act as a judge. It is plausible to say that if an act, sought to be defended as a judicial act, has been pronounced without authority and void, it could not have been done judicially. But we have yet to learn that the eminent court which used that language in adjudging upon the case made upon that writ, would hold that the defendant did not act as a judge in pronouncing the judgment which was deemed without power to sustain it. The opinion also says: "A judgment may be erroneous and

not void; and it may be erroneous *because* it is void. The distinctions between void and voidable judgments are very nice, and they may fall under the one class or the other, *as they are regarded for different purposes.*" We do not think that learned court would disregard the reasoning of *Howell's Case (supra)*, and others like unto it. Yet in *Bushell's Case (supra)*, he was discharged on *habeas corpus*, on the ground that Howell as judge had no power or authority to fine or imprison him for the cause set up; it was called "a wrongful commitment" (1 Mod., 184), as contrasted with "an erroneous judgment" (12 Mod., 381, 392); and yet when Howell was called to answer in a civil action for the act, it was held that though without authority it was judicial. In *Bushell's Case* (1 Mod., 119), HALE, C. J., said: "The *habeas corpus* and the writ of error, though it doth make the judgment void, doth not make the awarding of the process void to that purpose," *i. e.*, of an action against the judge, "and the matter was done in a court of justice," he continued. So is the comment upon that case. (*Yates* v. *Lansing*, 5 J. R., *290.) "It had jurisdiction of the cause because it had power to punish a misdemeanor in a juror, though in the case before the court the recorder made an erroneous judgment in considering the act of the juror as amounting to a misdemeanor, when in fact it was no misdemeanor." (2 Mod., 218.) So in *Ackerley* v. *Parkinson* (*supra*), the defendant was held protected though the citation issued by him was considered as a nullity; on the ground that the court had a general jurisdiction over the subject-matter.

·Let it be conceded, at this point, that the law is now declared, that the act of the defendant was without authority and was void, yet it was not so plain as then to have been beyond the realm of judicial discussion, deliberation and consideration, as is apparent from the fact that four judges, other than the defendant, acting as judges, have agreed with him in his view of the law.

He was, in fact, sitting in the place of justice; he was at the very time of the act a court; he was bound by his duty

to the public and to the plaintiff to pass as such, upon the question growing out of the facts presented to him, and as a court to adjuge whether a case had arisen in which it was the demand of the law, that on the vacating of the unlawful and erroneous sentence or judgment of the court, another sentence or judgment could be pronounced upon the plaintiff. So to adjudge was a judicial act, done as a judge, as a court; though the adjudication was erroneous, and the act based upon it was without authority and void. Where jurisdiction over the subject is invested by law in the judge, or in the court which he holds, the manner and extent in which the jurisdiction shall be exercised are generally as much questions for his determination as any other involved in the case; although upon the correctness of his determination in those particulars, the validity of his judgment may depend. (*Ackerley* v. *Parkinson, supra.*) For such an act, a person acting as judge therein is not liable to civil or criminal action. The power to decide protects, though the decision be erroneous. (See *Garnett* v. *Farrand,* 6 B. & C., 611.)

There is another view of this case. It is certain that the defendant as the Circuit Court, had at first jurisdiction of the plaintiff, and jurisdiction of the cause and the proceedings. That jurisdiction continued to and including the pronouncing of the first sentence; nay, until and including the giving of the order vacating that sentence. If it be admitted that at the instant of the utterance of that order jurisdiction ceased, as is claimed by the plaintiff, on the strength of the opinion in *Ex parte Lange* (*supra*), as commented upon *Ex parte Parks* (93 U. S. R., 18), and that all subsequent to that was *coram non judice*, and void; still it was so, not that the court never had jurisdiction, but that the last act was in excess of its jurisdiction. Thus in the opinion (*Ex parte Lange, supra,* p. 165) it was said that the facts very fairly raised the question whether the circuit court in the sentence which it pronounced, and under which the prisoner was held, had not exceeded its powers. (See, also, page 174.) We think that the whole effect of the opinion

is, not that the court had no jurisdiction, no power over the prisoner and the case, but that it had no authority to impose further punishment. "All further exercise of it in that direction was forbidden." (Page 178.) What is an act in excess of judicial authority is shown by *Clarke* v. *May* (2 Gray, 410). There a justice of the peace having jurisdiction of a case summoned a person to appear before him as a witness therein. That person disobeyed. The case was tried and ended. Thereafter the justice issued process to punish for contempt the person summoned as a witness. He was arrested, fined, and not paying, was committed. It was held that the power to punish for contempt was incidental to the power to try the main case ; that when the latter was ended jurisdiction had ceased, and the power to punish for contempt no longer existed, and that the proceedings had to that end were in excess of jurisdiction, and the justice was liable. And the distinction between a case where the magistrate acts with no jurisdiction at all, and one where his act is beyond or in excess of his jurisdiction, is shown by the case last cited, and that of *Piper* v. *Pearson*, in the same volume, page 120.

This act of the defendant was then one in excess of, or beyond the jurisdiction of the court. And though when courts of special and limited jurisdiction exceed their powers, the whole proceedings is *coram non judice,* and void, and all concerned are liable, this has never been carried so far as to justify an action against a judge of a superior court, or one of general jurisdiction, for an act done by him in a judicial capacity. (*Yates* v. *Lansing, supra ; Bradley* v. *Fisher, supra ; Randall* v. *Brigham,* 7 Wall., 523.)

In the case last cited it is said of judges of Superior Courts : They are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, unless perhaps they are done maliciously or corruptly. (Pages 536, 537.) And in the other cases a distinction is observed and insisted upon between excess of jurisdiction and a clear absence of all jurisdiction over the subject-mat-

ter.    And to the same effect is this : " For English judges,
when they act *wholly without* jurisdiction    *    *    *    have
no privilege." (*Per* PARKE, B.; *Calder* v. *Halket*, 3 Moore
P. C. C., 28, 75.)

Now it may be conceded that the Circuit Court is not a
court of general jurisdiction ; that in a sense it is a court of
limited and special jurisdiction (*Kempe's Lessee* v. *Kennedy*,
5 Cranch, 173); inasmuch as it must look to the acts of
Congress for the powers conferred.    But it is not an inferior
court.    It is not subordinate to all other courts in the same
line of judicial function.    It is of intermediate jurisdiction
between the inferior and the supreme courts.    It is a court
of record ; one having attributes and exercising functions,
independently of the person of the magistrate designated gen-
erally to hold it ; *per* SHAW, C. J. (*Ex parte Gladhill*, 8
Metc., 168, 170) ; it proceeds according to the course of the
common law ; it has power to render final judgments and
decrees which bind the persons and things before it, conclu-
sively, in criminal as well as civil cases, unless revised on
error or appeal. (*Grignon's Lessee* v. *Astor*, 2 How. [U. S.],
341; see *Ex parte Tobias Watkins*, 3 Pet., 193.)    " Many
cases are to be found wherein it is stated generally that when
an inferior court exceeds its jurisdiction its proceedings are
entirely void, and afford no protection to the court, the party,
or the officer who executes its process.    I apprehend that it
should be qualified when the subject-matter of the suit is
within the jurisdiction of the court, and the alleged defect
of jurisdiction arises from some other cause." (*Per* MARCY,
J.; *Savacool* v. *Boughton*, 5 Wend., 172.)    How much more
so when the court is not inferior ?

There are analogies in the law.    Take the case of a removal
of a cause from a State court to the Circuit Court of the
United States.    When the party petitioning for a removal
has presented his papers in due form and sufficiency to the
State court, and has in all respects complied with the terms
of the act of Congress, the State court cannot refuse.
Though it does, all subsequent proceeding in it are *coram*

*non judice.* (See *Fisk* v. *U. P. R. R. Co.*, 6 Blatchf., 362 ; *Matthews* v. *Lyall*, 6 McLean, 13.) Though the judge of the State court has a legal discretion to exercise as to the right of removal (*Ladd* v. *Tudor*, 3 Woodb. & M., 325); if the facts entitle to a removal, it may not be withheld, and when they are shown it is the duty of the State court to proceed no further; each step after that is *coram non judice.* (*Gordon* v. *Longest*, 16 Peters, 101.) Yet, in case a judge did, in the honest exercise of his judgment, refuse a removal and proceed with the case in the State court, would it be contended that he was liable in a civil action ? He had jurisdiction of the cause originally. That jurisdiction had ceased. His further acts were beyond or in excess of his jurisdiction.

A plea of title, put in in a court of a justice of the peace, in accordance with statute, ousts of jurisdiction. That court had jurisdiction of the cause originally, and the power to pass upon the sufficiency of the plea and accompanying papers. If it should err, and hold that jurisdiction had not been taken away, when it had ; would the magistrate be liable in a civil action, always allowing for the difference in the respect that that court is of limited and special jurisdiction ? (See *Striker* v. *Mott*, 6 Wend., 465.)

For these reasons we are of the opinion that the defendant is protected by his judicial character from the action brought by the plaintiff. We have not gone into a written consideration of all the matters urged by the learned and zealous counsel for the plaintiff in his very elaborate and exhaustive brief and printed argument. We have read them with great interest and benefit. To follow them in an opinion, and to comment upon all the cases cited and positions taken, would be to write a treatise upon this subject. That would be no good reason why they should not be followed and discussed, if the requirements of the case demanded it. The case turns upon a question more easily stated than it is determined : Was the act of the defendant done as a judge ? Our best reflection upon it, aided by the reasonings and conclusions of

many more cases than we have cited, has brought us to the conclusion that as he had jurisdiction of the person and of the subject-matter, and as his act was not without the inception of jurisdiction, but was one no more than in excess of or beyond jurisdiction, the act was judicial.    We are not unmindful of the considerations of the protection of the liberty of the person, and of the staying of a tendency to arbitrary exercise of power, urged with so much eloquence by the learned and accomplished counsel for the appellant. Nor are we of the mind of the court, in 2 Mod. (218, 220), that "these are mighty words in sound, but nothing to the matter."    They are to the matter, and not out of place in such a discussion as this.    Nor have we been disposed to outweigh those considerations, with that other class, which sets forth the need of judicial independence, and of its freedom from vexation on account of official action, and of the interest that the public have therein.    (See *Bradley* v. *Fisher*, *supra; Taffee* v. *Downs*, in note to *Calder* v. *Halket*, 3 Moore P. C. C., 28, 41, 51. 52.)    These are not antagonistic principles ; they are simply countervailing.    As with all other rules which act in the affairs of men, preponderance may not be fondly given to one to the disregard of the other ; each should have its due weight yielded to it, for thus only is a safe equipoise reached.

We have arrived at our decision upon what we hold to be long and well-established principles applied to the peculiar facts of this interesting case.

The judgment of the General Term should be affirmed.

All concur, except ANDREWS, J., absent.

Judgment affirmed.